UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOVADAQ TECHNOLOGIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>KARL STORZ GMBH & CO. K.G., et al.,<br><br>Defendants. | Case No. 14-cv-04853-PSG<br><br>**ORDER GRANTING-IN-PART MOTIONS FOR SUMMARY JUDGMENT**<br><br>**(Re: Docket Nos. 224, 225, 226, 230)** |

Product launches are all about creating excitement. Excitement for a product. Excitement for the product's manufacturer. Excitement for the product's anticipated customers. But not everyone is excited, especially a trademark owner that believes the launched product infringes that trademark. This dispute offers one such example.

Plaintiff Novadaq Technologies, Inc. specializes in medical imaging products that use its SPY-trademarked fluorescence imaging technology.[1] Defendants Karl Storz GmbH & Co. KG, headquartered in Germany, and its American counterpart Karl Storz Endoscopy-America, Inc. manufacture and sell imaging systems for endoscopic surgery.[2] In 2014, Karl Storz launched a new product named IMAGE 1 SPIES, which came with software applications called SPIES CHROMA and SPIES SPECTRA,[3] prompting Novadaq to file this trademark infringement suit.[4]

---

[1] *See* Docket No. 28 at ¶¶ 7-21; Docket No. 98 at ¶ 2.

[2] *See* Docket No. 227-1 at ¶¶ 4, 6.

[3] *See id.* at ¶¶ 15-18.

[4] *See* Docket No. 1.

1
Case No. 14-cv-04853-PSG
ORDER GRANTING-IN-PART MOTIONS FOR SUMMARY JUDGMENT

Both sides now move for summary judgment on a number of issues.[5] Novadaq's motion is GRANTED, and Karl Storz' motions are GRANTED-IN-PART.

**I.**

Novadaq, a Canadian company, was founded in 2000 and began developing its fluorescence imaging technology in 2001.[6] That same year, Novadaq registered its SPY word mark with the United States Patent and Trademark Office.[7] Four years later, Novadaq introduced its first SPY system to the American market.[8] Since then, the company has marketed imaging devices for use in a variety of surgical applications, and all use what Novadaq calls its proprietary SPY fluorescence imaging technology.[9] In particular, Novadaq sells a SPY ELITE imaging system for open surgical procedures.[10] At least since September 2011, Novadaq has organized conferences called SPIES or iSPIES, which stand for Summits for Perfusion Imaging and Excellence in Surgery.[11]

[12] [13]

Novadaq also has ventured into minimally invasive endoscopic surgery, most notably by

---

[5] *See* Docket Nos. 224, 225, 226, 230.

[6] *See* Docket No. 98 at ¶ 2.

[7] *See* Docket No. 248-4; Docket No. 248-5.

[8] *See* Docket No. 98 at ¶¶ 2-3; Docket No. 230-2 at 19; Docket No. 248-1 at ¶ 3.

[9] *See* Docket No. 98 at ¶ 3; Docket No. 247-13 at 21:22-22:16.

[10] *See* Docket No. 98 at ¶ 3; Docket No. 230-2 at 20; Docket No. 231-116.

[11] *See* Docket No. 223-44 at 17; Docket No. 231-87.

[12] Docket No. 248-25.

[13] Docket No. 248-42 at NVDQ000864347.

(United States District Court, Northern District of California)

1   developing its own SPY-based system that it initially called SPYSCOPE.[14] In 2008 and 2009,
2   Novadaq exhibited the SPYSCOPE device at industry conferences, including the Society of
3   American Gastrointestinal and Endoscopic Surgeons annual meeting in 2009, where Novadaq
4   gave Karl Storz head Dr. Sybill Storz a personal demonstration.[15] Novadaq secured FDA
5   approval for the SPYSCOPE device and placed it with several clinical investigators.[16] By the time
6   Novadaq started selling the device in 2012, however, it had renamed it PINPOINT on the advice
7   of its distributor LifeCell.[17] Marketing for the PINPOINT product nevertheless specified that it
8   featured Novadaq's SPY technology, as did the body of the product itself starting at least in
9   2014.[18]

[19]  [20]

---

[14] *See* Docket No. 98 at ¶¶ 4-5; Docket No. 248-1 at ¶¶ 4-5; Docket No. 248-25.

[15] *See* Docket No. 98 at ¶¶ 5-8; Docket No. 223-28 at 38:3-43:15; Docket No. 248-1 at ¶¶ 4-7; Docket No. 248-19 at 84:1-6; Docket No. 248-25; Docket No. 248-26.

[16] *See* Docket No. 223-28 at 44:15-22; Docket No. 248-1 at ¶¶ 5-9, 11; Docket No. 248-19 at 84:7-22; Docket No. 247-15.

[17] *See* Docket No. 223-28 at 44:23-45:23, 219:18-21; Docket No. 248-19 at 84:25-85:24; Docket No. 248-29.

[18] *See* Docket No. 248-19 at 89:5-25, 136:3-25; Docket No. 248-21 at 46:24-47:18; Docket No. 248-29; Docket No. 248-40; Docket No. 248-41; Docket No. 248-42; Docket No. 248-44; Docket No. 257-10 at 200:8-20.

[19] Docket No. 248-42 at NVDQ000864345.

[20] Docket No. 248-40.

3
Case No. 14-cv-04853-PSG
ORDER GRANTING-IN-PART MOTIONS FOR SUMMARY JUDGMENT

1   While Novadaq is a relative newcomer to the medical imaging market, Karl Storz is an
2   established heavyweight. Founded in Germany in 1945, today the company employs thousands of
3   people and has subsidiaries in dozens of countries.[21] Building on decades of experience in
4   endoscopic imaging, Karl Storz launched the IMAGE 1 system in 2002 and the IMAGE 1 HD
5   system in 2007.[22] These systems comprise both hardware and software components that enable
6   capture, display and recording of real-time images and video from endoscopic procedures.[23]
7   Around 2010, Karl Storz coined the SPIES acronym, short for Storz Professional Image
8   Enhancement System, for its next-generation product.[24] In 2011, Karl Storz applied to register a
9   SPIES mark in Germany and then in the United States.[25] And in March 2014, Karl Storz
10  introduced the SPIES system to the American market, bearing the full name IMAGE 1 SPIES and
11  including software applications known as SPIES CLARA and SPIES CHROMA.[26]

:spies™

STORZ PROFESSIONAL IMAGE ENHANCEMENT SYSTEM [27]

---

[21] *See* Docket No. 223-16 at 92:21; Docket No. 231-1; Docket No. 231-3; Docket No. 227-1 at ¶¶ 3, 5. Novadaq raises evidentiary objections to various statements in a declaration by Thomas Prescher, the director of upstream marketing at Karl Storz Endoscopy America. *See* Docket No. 227-1; Docket No. 247-4 at 4-7. The court need not rule on these objections because Prescher's statements do not affect the court's ultimate decisions. The court refers to them here only to provide context for the reader.

[22] *See* Docket No. 227-1 at ¶¶ 4, 9, 11.

[23] *See id.* at ¶ 9; Docket No. 247-22 at KS015494.

[24] *See* Docket No. 223-16 at 13:16-19, 22:2-4, 26:3-11, 28:4-13.

[25] *See* Docket No. 231-13; Docket No. 231-14.

[26] *See* Docket No. 227-1 at ¶¶ 15-18; Docket No. 247-22 at KS015496-97.

[27] Docket No. 247-22 at KS015496.

4
Case No. 14-cv-04853-PSG
ORDER GRANTING-IN-PART MOTIONS FOR SUMMARY JUDGMENT

[28] [29]

Novadaq brought the present suit in October 2014.[30]  It alleges under 15 U.S.C. § 1114 that Karl Storz' actions with respect to its SPIES products infringe Novadaq's SPY-related trademarks.[31]  Novadaq also brings several other related causes of action under both federal and California law.[32]  Finally, Novadaq seeks the cancellation of several of Karl Storz' own trademark registrations on SPIES and related marks.[33]

## II.

This court has jurisdiction under 28 U.S.C. §§ 1331 and 1367.  The parties further consented to the jurisdiction of the undersigned under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).

---

[28] Docket No. 247-20.

[29] Docket No. 258-16.

[30] *See* Docket No. 1.

[31] *See* Docket No. 28 at ¶¶ 55-62.

[32] *See id.* at ¶¶ 63-86.

[33] *See id.* at ¶¶ 87-91.

5
Case No. 14-cv-04853-PSG
ORDER GRANTING-IN-PART MOTIONS FOR SUMMARY JUDGMENT

### III.

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Material facts are those that may affect the outcome of the case.[34] A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.[35] All evidence must be viewed in the light most favorable to the non-moving party. At this stage, a court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial."[36] Initially, the moving party bears the burden to show that no genuine issue of material fact exists.[37] If this burden is met, the burden shifts to the non-moving party.[38] Applying these standards to the parties' claims and the evidence in the record, the court concludes that only some of the issues presented can be resolved.

*First*, Novadaq's registered SPY mark covers endoscopic medical imaging systems because the registration is now incontestable and those devices are within the scope of the registration. The Lanham Act provides that a registered trademark may become incontestable when certain requirements are met, one of which is filing with the USPTO an affidavit "setting forth those goods or services stated in the registration on or in connection with which such mark has been in continuous use for . . . five consecutive years [after the registration date] and is still in use in commerce."[39] An incontestable trademark registration is "conclusive evidence of the validity of the registered mark and of . . . the registrant's exclusive right to use the registered mark

---

[34] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.").

[35] *See id.*

[36] *House v. Bell*, 547 U.S. 518, 559-60 (2006).

[37] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

[38] *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 630, 630 (9th Cir. 1987).

[39] 15 U.S.C. § 1065(3).

in commerce . . . on or in connection with the goods or services specified in the affidavit" above.[40]

Even an incontestable trademark registration, however, still is subject to several defenses, including "[t]hat the mark has been abandoned by the registrant."[41] "The burden is on the challenger to plead and prove one or more of the statutory exceptions to incontestability: they are affirmative defenses not put in issue by a general denial."[42] To establish abandonment, the accused infringer must show that the trademark owner "is not using its mark on the goods that will be effectively excluded by the proposed restriction."[43] "To the extent that courts have applied a 'partial abandonment' theory, it has been limited to situations where the registration describes a class of goods or services on which the owner has ceased using his mark."[44]

Karl Storz did not plead abandonment among its affirmative defenses.[45] Nevertheless, Karl Storz now argues, both in its own motion for summary judgment and in opposition to Novadaq's, that Novadaq abandoned its SPY mark with respect to devices used in minimally invasive or endoscopic surgery. By failing to plead it earlier, Karl Storz plainly waived its right to raise this defense now.

---

[40] 15 U.S.C. § 1115(b).

[41] *Id.* § 1115(b)(2).

[42] 6 *McCarthy on Trademarks and Unfair Competition* § 32:149 (4th ed. 2015); *see Dakota Indus., Inc. v. Ever Best Ltd.*, 28 F.3d 910, 913 (8th Cir. 1994); *O'Brien Int'l, Inc. v. Mitch*, Case No. 79-cv-0227, 1980 WL 30251, at *7 n.15 (N.D. Cal. June 16, 1980); *Philip Morris, Inc. v. Imperial Tobacco Co.*, 251 F. Supp. 362, 379 (E.D. Va. 1965).

[43] *Levi Strauss & Co. v. GTFM, Inc.*, 196 F. Supp. 2d 971, 976 (N.D. Cal. 2002) (quoting *Milliken & Co. v. Image Indus., Inc.*, 39 U.S.P.Q.2d 1192, 1996 WL 383905, at *2 (T.T.A.B. 1996)).

[44] *Id.* at 977.

[45] *See* Docket No. 30 at 12. At the hearing on this motion, Karl Storz moved for leave to amend its pleadings to include the defense, citing the Ninth Circuit's holding that "absent prejudice to the plaintiff, the district court has discretion to allow a defendant to plead an affirmative defense in a subsequent motion." *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1023 (9th Cir. 2010). Allowing amendment to add this defense at this late date would prejudice Novadaq. The court denies Karl Storz' motion for leave to amend, as it has done once before. *See* Docket No. 157.

Even if it had pled the defense, Karl Storz could not succeed on the merits. Novadaq's SPY trademark became incontestable, at the latest, by March 23, 2011, when the USPTO acknowledged Novadaq's affidavit.[46] Under Section 1115(b), the registration encompasses "the goods or services specified in the affidavit"—namely, "[m]edical imaging systems comprised primarily of imaging, lighting, monitoring and video recording equipment and a computer system for controlling such equipment."[47] In other words, the registration covers all "medical imaging systems" comprising the elements above. Karl Storz has cited no support for the proposition that it can carve out endoscopic imaging devices—a class of goods that does not appear separately in the registration—for the purposes of proving partial abandonment. In fact, the authority available cuts the other way.[48]

This makes sense. Congress created the incontestability provisions in an effort to accord trademarks "the greatest protection that can be given them."[49] Accordingly, the Lanham Act narrowly defines abandonment "as (1) discontinuance of trademark use *and* (2) intent not to resume such use."[50] And when applying to register a trademark, the owner specifies the intended

---

[46] *See* 15 U.S.C. § 1115; Docket No. 230-5 at NVDQ000052516.

[47] Docket No. 230-5 at NVDQ000052522.

[48] *See DC Labs Inc. v. Celebrity Signatures Int'l, Inc.*, Case No. 12-cv-1454, 2013 WL 4026366, at *2 (S.D. Cal. Aug. 6, 2013) ("[P]artial cancellation is legally possible for abandonment of a specific good listed in the registration."); *Monster Cable Prods., Inc. v. Discovery Commc'ns, Inc.*, Case No. 03-cv-3250, 2004 WL 2445349, at *2 (N.D. Cal. Nov. 1, 2004) ("The Trademark Board, however, appears to acknowledge the possibility of partial cancellation for abandonment of a specific good listed in the registration."); *Levi Strauss*, 196 F. Supp. 2d at 976 ("To the extent that courts have applied a 'partial abandonment' theory, it has been limited to situations where the registration describes a class of goods or services on which the owner has ceased using his mark."); *Milliken*, 1996 WL 383905, at *3; *Dak Industries Inc. v. Daiichi Kosho Co.*, 35 U.S.P.Q.2d 1434, 1995 WL 454108, at *3-4 (T.T.A.B. 1995); *Eurostar Inc. v. "Euro-Star" Reitmoden GmbH & Co. KG*, 34 U.S.P.Q.2d 1266, 1995 WL 231387, at *5-6 (T.T.A.B. 1994).

[49] *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 193 (1985) (quoting S. Rep. No. 1333, at 6 (1946)).

[50] *Electro Source, LLC v. Brandess-Kalt-Aetna Group, Inc.*, 458 F.3d 931, 935 (9th Cir. 2006).

usages for the mark—"those goods on which the mark appears along with, if applicable, their channels of distribution."[51] The owner of a registered trademark thus knows exactly what it needs to do to avoid abandoning the mark. That is, the owner must maintain an intention to keep using the mark in connection with each of the classes of goods that the owner specified in the registration. Allowing challengers to chip away at the class of goods covered by a registered trademark would introduce uncertainty into the registration system and make it unnecessarily difficult for an owner to keep its marks.

***Second***, Karl Storz has not shown a genuine dispute of fact with respect to its claim of laches. "To prevail on a laches defense, a defendant must show two elements: (1) the claimant unreasonably delayed in filing suit based on when the claimant knew or should have known of the allegedly infringing conduct; and (2) as a result of the delay, the defendant suffered prejudice."[52] A plaintiff presumptively acts reasonably by bringing a claim within the statute of limitations period for the most closely analogous state law claim.[53] Under California law, that period is four years.[54] Karl Storz itself admits that the earliest possible triggering date for laches was August 5, 2011—less than four years before Novadaq filed this suit—and it has not shown any "extraordinary circumstances" that might overcome the presumption of reasonability.[55] And because a defendant must prove the elements of laches before it can establish acquiescence, the

---

[51] *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1300 (2015).

[52] *AirWair Int'l Ltd. v. Schultz*, 84 F. Supp. 3d 943, 955 (N.D. Cal. 2015) (citing *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 952-56 (9th Cir. 2001)).

[53] *See Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 997 (9th Cir. 2006).

[54] *See id.* at 997 n.11. Karl Storz disputes this conclusion, but cites no precedent that departs from the universal trend.

[55] *Danjaq*, 263 F.3d at 954 (quoting *Telink, Inc. v. United States*, 24 F.3d 42, 46 n.5 (9th Cir. 1994)). Karl Storz argues only that Novadaq should have known of Karl Storz' potential infringement in 2011 but that it failed to challenge any of Karl Storz' registrations for its SPIES mark. *See* Docket No. 245-4 at 16-17. There is no evidence that Novadaq actually learned of the alleged infringement until January 2014. *See* Docket No. 246-4 at 66:25-67:4.

latter defense falls as well.[56]

***Third***, Karl Storz' other affirmative defenses—of estoppel and unclean hands—fare no better. "A defendant in a trademark infringement lawsuit claiming estoppel must show (1) that the plaintiff 'knew [the defendant] was selling potentially infringing' products; (2) the plaintiff's 'actions or failure to act led [the defendant] to reasonably believe that [the plaintiff] did not intend to enforce its trademark right' against defendant; (3) that defendant did not know the plaintiff 'actually objected to the sale of its potentially infringing [product]'; and (4) due to its reliance on the plaintiff's actions, defendant 'will be materially prejudiced' if the plaintiff 'is allowed to proceed with its claim.'"[57] Karl Storz claims that it interpreted Novadaq's failure to enforce its trademark rights against others to mean that Novadaq would not pursue Karl Storz, but it cites no evidence from the record—no declaration, no deposition testimony, no email, nothing—to support this assertion.[58]

As for unclean hands, Karl Storz "must demonstrate that the plaintiff's conduct is inequitable and that the conduct relates to the subject matter of its claims."[59] Karl Storz argues that Novadaq's hands are unclean because Novadaq applied for a trademark registration for iSPIES with an inaccurate first use date,[60] included that incorrect first use date in its pleadings here[61] and continues to prosecute this case in bad faith to expand its trademark rights unlawfully. The latter two cannot underlie an unclean hands defense because they relate to the current

---

[56] *See AirWair*, 84 F. Supp. 3d at 956-57.

[57] *Id.* at 958 (alterations in original).

[58] *See* Docket No. 245-4 at 20-21.

[59] *Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 870 (9th Cir. 2002) (quoting *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir. 1987)).

[60] When it filed the iSPIES application, Novadaq alleged a date of first use of October 2009. *See* Docket No. 230-25 at NVDQ000052937. But in discovery responses in this litigation, Novadaq admits that in fact it did not use the mark until September 2011. *See* Docket No. 230-2 at 20-21.

[61] *See* Docket No. 28 at ¶¶ 27, 52. As above, Novadaq no longer claims this date of first use.

litigation, not to how Novadaq allegedly obtained the asserted trademark rights.[62] All that remains is the incorrect first use date Novadaq provided when applying for the iSPIES trademark registration. But Karl Storz does not dispute that Novadaq used the mark before it applied for the iSPIES registration.[63] The claimed date of first use thus was not a material misrepresentation.[64] Furthermore, as Novadaq points out, in this action it has asserted only common law rights to the SPIES and iSPIES marks,[65] and trademark registration has no effect on the owner's common law rights in the mark.[66] Novadaq's misstatements to the PTO are immaterial to this case and cannot support an unclean hands defense.

*Fourth*, no reasonable jury could find Karl Storz liable for willful infringement of Novadaq's trademarks or for monetary damages. "Willful infringement carries a connotation of deliberate intent to deceive."[67] Conduct that is "deliberate, false, misleading, or fraudulent" meets this standard.[68] In deciding whether to award attorneys' fees in a trademark infringement case, the Ninth Circuit has said that "[i]nfringement is not willful if the defendant 'might have reasonably

---

[62] *See* 6 *McCarthy on Trademarks* at § 31:51 ("The act of bringing the lawsuit is not the subject matter concerning which plaintiff seeks relief. Unclean hands must relate to the getting or using the alleged trademark rights." (citing *Sears, Roebuck & Co. v. Sears*, 744 F. Supp. 1297, 1300 (D. Del. 1990)).

[63] *See* Docket No. 230-2 at 20-21; Docket No. 230-25.

[64] *See Pony Express Courier Corp. v. Pony Express Delivery Serv.*, 872 F.2d 317, 319 (9th Cir. 1989) ("The claim of a date of first use is not a material allegation as long as the first use in fact preceded the application date.").

[65] *See* Docket No. 28 at ¶ 1.

[66] *See Cal. Cooler, Inc. v. Loretto Winery, Ltd.*, 774 F.2d 1451, 1454 (9th Cir. 1985).

[67] *Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1074 (9th Cir. 2015) (quoting *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1406 (9th Cir. 1993), *superseded by statute on other grounds*, Trademark Amendments Act of 1999, Pub. L. No. 106-43, 113 Stat. 218).

[68] *Id.* (quoting *Lindy Pen*, 982 F.2d at 1406).

thought that its proposed usage was not barred by the statute.'"[69] The discussion could start and end there. At the hearing on these motions, Novadaq represented that it did not move for summary judgment of infringement because it felt that genuine disputes of fact remain with respect to the likelihood of confusion.[70] In other words, Novadaq believes—and the court agrees, as detailed below—that a reasonable jury could find that Karl Storz did not infringe any of Novadaq's marks. It follows that Karl Storz reasonably could have believed that it did not infringe, meaning that any infringement by Karl Storz was not willful under *Blockbuster Videos*.

In any case, the facts that Novadaq cites could not lead a reasonable jury to find that Karl Storz deliberately intended to deceive customers. At most, the evidence suggests that Karl Storz' trademark searches were inadequate, that Karl Storz knew about Novadaq's similar marks and products and that Karl Storz acted unwisely in proceeding despite this knowledge.[71] But, as the Fourth Circuit has put it, "knowledge of another's goods is not the same as an intent 'to mislead and to cause customer confusion.'"[72] Willful infringement requires that Karl Storz intentionally misled customers by using Novadaq's marks, and no evidence in the record suggests that it did. To the contrary, Karl Storz executives were annoyed by the possibility that their products might be confused with Novadaq's,[73] and Karl Storz applied to register its own SPIES-related trademarks.[74] On this evidence, no reasonable jury could find Karl Storz liable for willful infringement. And because Novadaq only seeks damages "for recovery of unjust enrichment and disgorgement" and

---

[69] *Blockbuster Videos, Inc. v. City of Tempe*, 141 F.3d 1295, 1300 (9th Cir. 1998) (quoting *Int'l Olympic Comm. v. San Francisco Arts & Athletics*, 781 F.2d 733, 738-39 (9th Cir. 1986)).

[70] *See* Docket No. 271 at 33:23-34:10.

[71] *See* Docket No. 247-4 at 35-38.

[72] *George & Co. LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 398 (4th Cir. 2009) (quoting *Luigino's, Inc. v. Stouffer Corp.*, 170 F.3d 827, 831 (8th Cir. 1999)).

[73] *See* Docket No. 247-8 at 72:22-74:17, 111:9-112:12.

[74] *See* Docket Nos. 231-14, 231-24, 231-38, 231-48.

12
Case No. 14-cv-04853-PSG
ORDER GRANTING-IN-PART MOTIONS FOR SUMMARY JUDGMENT

not "actual losses,"[75] once willful infringement is out of the picture, so are damages.[76]

*Fifth*, the remaining issues on which Karl Storz seeks summary judgment, however, must go to the jury. Karl Storz moves for summary judgment of non-infringement because there is no confusion. In the Ninth Circuit, likelihood of confusion in a trademark action is evaluated by the eight-factor *Sleekcraft* test.[77] The factors are "1. strength of the mark; 2. proximity of the goods; 3. similarity of the marks; 4. evidence of actual confusion; 5. marketing channels used; 6. type of goods and the degree of care likely to be exercised by the purchaser; 7. defendant's intent in selecting the mark; and 8. likelihood of expansion of the product lines."[78] "The test is a fluid one and the plaintiff need not satisfy every factor, provided that strong showings are made with respect to some of them."[79] "Given the open-ended nature of this multi-prong inquiry, it is not surprising that summary judgment on 'likelihood of confusion' grounds is generally disfavored."[80]

This case is not one of the rare exceptions. Karl Storz raises plausible arguments for why there is no likelihood of confusion between Novadaq's SPY marks and Karl Storz' products, but Novadaq does the same on the other side for each *Sleekcraft* factor. It is unnecessary to summarize all of their contentions here, but several factors are pivotal in precluding summary judgment. For example, the third *Sleekcraft* factor is the similarity of the marks in the form in

---

[75] Docket No. 223-12 at 3.

[76] *Cf. Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 988 (9th Cir. 1995) (upholding a jury instruction conditioning an award of profits on a finding of willful infringement because the plaintiff was not seeking damages based on lost sales). Novadaq does not object to Karl Storz' reasoning on this point.

[77] *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979), *abrogated on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810 & n.19 (9th Cir. 2003).

[78] *Id.* at 348-49.

[79] *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 631 (9th Cir. 2005).

[80] *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1210 (9th Cir. 2012).

13
Case No. 14-cv-04853-PSG
ORDER GRANTING-IN-PART MOTIONS FOR SUMMARY JUDGMENT

which the customer encounters them in the marketplace.[81] Karl Storz claims that its products are always branded with the full name IMAGE 1 SPIES,[82] but Novadaq has put forth evidence that Karl Storz' SPIES mark creates its own commercial impression.[83] This in itself is a disputed issue of fact. So is whether, in either form, the marks—one of which is (or at least includes) the plural form of the other—are similar.

Novadaq also has shown a genuine dispute of fact with respect to the fourth and potentially most important *Sleekcraft* factor, evidence of actual confusion.[84] In an interrogatory response, Novadaq identified a number of instances of confusion,[85] several of which Novadaq later substantiated with deposition testimony from Novadaq employees and with documentary evidence.[86] Karl Storz introduces its own evidence and argues against the credibility of Novadaq's, but in doing so Karl Storz only highlights that a factual dispute remains.

Similarly, the fifth *Sleekcraft* factor, the marketing channels used, weighs against summary judgment. Novadaq and Karl Storz attend the same trade shows[87] and sell to the same doctors.[88]

---

[81] *See Sleekcraft*, 599 F.2d at 351.

[82] *See* Docket No. 258-16.

[83] *See* Docket Nos. 231-14, 231-24, 231-38, 231-48 (applications for trademark registrations containing SPIES but not IMAGE 1); Docket No. 247-22 at KS015494, KS015498 (pictures and screenshots of Karl Storz products where the words IMAGE 1 are separated from the word SPIES).

[84] *See Sleekcraft*, 599 F.2d at 352 ("Evidence that use of the two marks has already led to confusion is persuasive proof that future confusion is likely.").

[85] *See* Docket No. 248-48 at 59-70. Several of these instances involved initial interest confusion, where a similar mark "capture[s] initial consumer attention," which can lead to a finding of trademark infringement even if no actual sale is completed. *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1405 (9th Cir. 1997).

[86] *See* Docket No. 247-13 at 58:24-59:25; Docket No. 248-20 at 19:15-20:16, 30:14-31:19, 87:17-88:19, 144:20-148:20; Docket No. 248-52; Docket No. 248-54; Docket No. 248-55; Docket No. 257-12 at 143:4-149:16.

[87] *See* Docket No. 247-13 at 54:13-55:23; Docket No. 248-25; Docket No. 248-26; Docket No. 248-44; Docket No. 248-45.

14
Case No. 14-cv-04853-PSG
ORDER GRANTING-IN-PART MOTIONS FOR SUMMARY JUDGMENT

Karl Storz argues that this means little, because "the shared use of a ubiquitous marketing channel does not shed much light on the likelihood of consumer confusion."[89]  But in *Network Automation*, the Ninth Circuit was discussing the Internet as a whole.  These industry conventions are "niche marketplaces,"[90] where "the general class of . . . purchasers exposed to the products overlap."[91]  Even if Novadaq and Karl Storz make actual sales through dedicated sales forces and a lengthy sales process,[92] the companies use the same marketing fora to funnel customers into these sales channels.  All told, on likelihood of confusion, the parties must plead their cases to the jury.

Karl Storz also seeks summary judgment that it has prior rights to the SPIES and iSPIES marks.  In general, "[t]he party who first uses a mark in uses a mark is said to have priority over other uses."[93]  But "in limited circumstances, a party may clothe a new mark with the priority position of an older mark."[94]  This doctrine, called "tacking," is "available when the original and revised marks are 'legal equivalents' in that they create the same, continuing commercial impression."[95]  In general, it is the jury's task to determine if two marks are legally equivalent.[96]  However, "tacking only applies in 'exceptionally narrow' circumstances,"[97] and the court may

---

[88] *See* Docket No. 248-20 at 18:18-19:2, 32:14-25, 36:1-21, 83:5-84:25.

[89] *Network Automation v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1151 (9th Cir. 2011).

[90] *Id.*

[91] *Sleekcraft*, 599 F.2d at 353.

[92] *See* Docket No. 223-32 at 69:20-74:19.

[93] *Hana Fin., Inc. v. Hana Bank (Hana II)*, 135 S. Ct. 907, 909 (2015).

[94] *Id.*

[95] *Id.*

[96] *See id.* at 910-911.

[97] *Hana Fin., Inc. v. Hana Bank (Hana I)*, 735 F.3d 1158, 1160 (9th Cir. 2013) (quoting *Brookfield Commc'ns v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999)), *aff'd*, 135 S. Ct. 907 (2015).

15
Case No. 14-cv-04853-PSG
ORDER GRANTING-IN-PART MOTIONS FOR SUMMARY JUDGMENT

1   decide the issue of tacking on summary judgment when "the facts warrant it."[98]

2   The facts do not warrant it here. Karl Storz claims a priority date of February 28, 2011 for
3   its SPIES mark because SPIES is the dominant portion of a word-design composite mark that it
4   registered in Germany on that date.[99] Novadaq argues that Karl Storz cannot claim priority to the
5   German registration. Although Novadaq acknowledges that the registration provides prima facie
6   evidence that Karl Storz owns this mark, Novadaq contends that it is rebutted by evidence that
7   Karl Storz never used the mark in the United States. On this preliminary issue, at least, the court
8   agrees with Karl Storz. The deposition testimony that Novadaq cites says only that the specific
9   graphic in front of the deponent was associated with a product designed for Europe.[100] It does not
10  stand for the broad proposition that Karl Storz never had a "bona fide intention to use" the SPIES
11  mark in the United States.[101]

12  Novadaq's case for tacking, on the other hand, is more plausible. Novadaq admits that it
13  did not use its SPIES or iSPIES marks until September 2011,[102] but Novadaq argues that these
14  marks are legally equivalent to its SPY mark, which it has used since 2001.[103] Karl Storz notes
15  that Novadaq used the SPIES and iSPIES marks in connection with academic summits, not the
16  medical imaging systems that were covered by the SPY marks.[104] But a reasonable jury could find
17  that Novadaq chose the names SPIES and iSPIES to trade on Novadaq's brand identity as "the

---

[98] *Hana II*, 135 S. Ct. at 911.

[99] *See* Docket No. 231-13.

[100] *See* Docket No. 247-8 at 87:1-20.

[101] 15 U.S.C. § 1127.

[102] *See* Docket No. 230-2 at 20-21.

[103] *See* Docket No. 248-4 at NVDQ000902643. As Karl Storz points out, Novadaq raised the tacking argument for the first time in opposition to this motion. Previously, Novadaq said that it first used its SPIES and iSPIES marks in September of 2011. *See* Docket No. 223-44 at 17.

[104] *See* Docket No. 231-87.

16
Case No. 14-cv-04853-PSG
ORDER GRANTING-IN-PART MOTIONS FOR SUMMARY JUDGMENT

SPY imaging company."[105]  In other words, the jury could decide that Novadaq's customers "perceive[d] [the marks] as conveying the same idea or meaning or evoking the same mental reaction."[106]

Finally, a reasonable jury could find that Novadaq owns a protectable interest in the SPYSCOPE mark.  The party claiming a protectable ownership interest in a trademark must show that it used the mark in commerce,[107] meaning that goods bearing the mark have been "sold or transported in commerce."[108]  This "typically occurs when a mark is used in conjunction with the actual sale of goods or services."[109]  "However, 'trademark rights can vest even before any goods or services are actually sold if the totality of one's prior actions, taken together, can establish a right to use the trademark.'"[110]  Advertising by itself is not enough, but "advertising combined with other non-sales activity . . . can constitute prior use in commerce."[111]  The party claiming ownership also must show that this prior use was continuous and uninterrupted.[112]

Novadaq developed an endoscopic imaging system called SPYSCOPE, although it changed the name to PINPOINT before it started selling the product to the general public.[113]  Before it changed the name, however, Novadaq demonstrated a system bearing the SPYSCOPE

---

[105] Docket No. 248-25.

[106] *Hana I*, 735 F.3d at 1166-67.

[107] *See Rearden*, 683 F.3d at 1203.

[108] 15 U.S.C. § 1127.

[109] *Brookfield Commc'ns*, 174 F.3d at 1051.

[110] *Chance v. Pac-Tel Teletrac*, 242 F.3d 1151, 1159 (quoting *Brookfield Commc'ns*, 174 F.3d at 1052).

[111] *Dep't of Parks & Recreation v. Bazaar del Mundo, Inc.*, 448 F.3d 1118, 1126 (9th Cir. 2006); *see also New W. Corp. v. NYM Co. of Cal., Inc.*, 595 F.2d 1194, 1200 (9th Cir. 1979).

[112] *See Bazaar del Mundo*, 448 F.3d at 1125-26.

[113] *See* Docket No. 223-28 at 44:15-45:23; Docket No. 248-19 at 84:7-89:1.

mark at trade shows in 2008 and 2009.[114] Novadaq placed the product with several clinical investigators, at least one of whom still uses it today.[115] And starting in 2009 and continuing at least through 2012, a surgeon published and presented the results of clinical trials using a SPYSCOPE system.[116] A jury could find that this commercial use, limited though it was, sufficed to give Novadaq an interest in the SPYSCOPE mark. Karl Storz argues that Novadaq abandoned any rights it might have had by failing to challenge Boston Scientific's SPY-related trademark registrations[117] and entering into a distribution agreement that barred it from selling products under the SPYSCOPE name.[118] Regardless, Novadaq has produced evidence that it never discarded the SPYSCOPE name completely. That evidence is sufficient to withstand summary judgment.

### IV.

Novadaq's motion for partial summary judgment on Karl Storz' defenses of no ownership, abandonment, laches, acquiescence, estoppel and unclean hands is GRANTED. Karl Storz' motion for summary judgment of no willful infringement and no monetary damages is GRANTED. Karl Storz' motions for summary judgment of non-infringement are DENIED.

**SO ORDERED.**

Dated: November 10, 2015

*[signature]*
PAUL S. GREWAL
United States Magistrate Judge

---

[114] *See* Docket No. 248-1 at ¶ 5-7; Docket No. 248-19 at 84:1-6; Docket No. 248-24; Docket No. 248-26.

[115] *See* Docket No. 248-1 at ¶¶ 7-11; Docket No. 247-13 at 90:9-17; Docket No. 248-19 at 84:7-85:5.

[116] *See* Docket No. 247-16; Docket No. 248-1 at ¶ 9.

[117] *See* Docket No. 223-30 at 107:8-24.

[118] *See* Docket No. 223-34 at 1.

18
Case No. 14-cv-04853-PSG
ORDER GRANTING-IN-PART MOTIONS FOR SUMMARY JUDGMENT