UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOVADAQ TECHNOLOGIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>KARL STORZ GMBH & CO. K.G., et al.,<br><br>Defendants. | Case No. 14-cv-04853-PSG<br><br>**OMNIBUS ORDER RE: MOTIONS IN LIMINE AND OTHER PRE-TRIAL ISSUES**<br><br>**(Re:  Docket Nos. 213, 281, 283, 303, 308, 324)** |

Plaintiff Novadaq Technologies, Inc. and Defendants Karl Storz GmbH & Co. K.G. and Karl Storz Endoscopy America have filed a total of 21 motions in limine,[1] two motions to exclude[2] and a motion to strike Novadaq's jury demand.[3]  The parties have appeared at a pre-trial conference and supplemented their briefing with oral argument.  As previewed at the hearing and explained further below, the court grants only a limited part of the requested relief.

**A.     Docket No. 281: Novadaq's Motion to Exclude Testimony from Philip G. Hampton**

Novadaq moves to strike portions of the expert report of Philip G. Hampton, II, and to preclude Hampton from testifying at trial on any topics he discussed in those portions of his report.  Novadaq argues that much of his report is improper rebuttal under Fed. R. Civ. P. 26(a)(2)(D)(ii), other parts express opinions that Karl Storz did not disclose in discovery and others still are unreliable under the *Daubert* standard[4] or inadmissible under Fed. R. Evid. 702 and

---

[1] *See* Docket Nos. 303, 307-3.

[2] *See* Docket Nos. 281, 283.

[3] *See* Docket No. 324.

[4] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

1
Case No. 14-cv-04853-PSG
OMNIBUS ORDER RE: MOTIONS IN LIMINE AND OTHER PRE-TRIAL ISSUES

703. Karl Storz opposes on all grounds.[5]

Karl Storz offers Hampton's opinions as rebuttal to opinions from Novadaq's retained expert, David Franklyn. In his report, Franklyn briefly explains the U.S. Patent and Trademark Office's trademark application process and then discusses nine specific topics.[6] Hampton's report mirrors the same structure and contains paragraphs on each of those topics.[7] Hampton then opines more broadly on the examination of Karl Storz' SPIES-formative marks and rebuts Franklyn's "implicit" opinions.[8]

As an initial matter, Hampton offers a number of opinions that are directly contrary to the court's holdings in its summary judgment order. These include his opinions on Novadaq's abandonment of SPY-formative marks with respect to endoscopic devices, the effects of Boston Scientific's trademark registrations on Novadaq's marks and Novadaq's common-law rights in the SPYSCOPE mark.[9] Because his opinions on issues already decided can no longer "help the [jury] . . . to determine a fact in issue,"[10] neither party may elicit those opinions.

As noted above, Novadaq contends that much of Hampton's opinion is not proper rebuttal from an expert. Rebuttal testimony must be "intended solely to contradict or rebut evidence on the same subject matter identified by another party."[11] Such testimony is "proper as long as it addresses the same subject matter that the initial experts address and does not introduce new arguments."[12] On the other hand, "challenging the assumptions of an expert witness' report is a

---

[5] *See* Docket No. 295.

[6] *See* Docket No. 281-3.

[7] *See* Docket No. 281-2 at ¶¶ 1-25.

[8] *Id.* at ¶¶ 26-37.

[9] *See* Docket No. 281-2 at ¶¶ 17-19, 21-22, 30-32, 35-37; Docket No. 292 at 6-9, 17-18.

[10] Fed. R. Evid. 702(a).

[11] Fed. R. Civ. P. 26(a)(2)(D)(ii).

2
Case No. 14-cv-04853-PSG
OMNIBUS ORDER RE: MOTIONS IN LIMINE AND OTHER PRE-TRIAL ISSUES

permissible topic of rebuttal testimony."[13]

Here, Franklyn did not offer any opinions on whether the USPTO should have rejected Karl Storz' applications to register SPIES-formative marks on likelihood of confusion grounds.[14] The opinions Hampton offers on that subject in paragraphs 26 through 29 of his expert report[15] are therefore improper rebuttal. Paragraphs 26 through 29 are stricken from Hampton's report, and Hampton may not testify at trial as to the opinions in those paragraphs. Similarly, Hampton's opinion about examining attorneys' analysis of the field of use for a proposed mark[16] relates to nothing in Franklyn's report other than Franklyn's general description of examining procedure. This paragraph is stricken, and Hampton may not offer the corresponding opinions at trial.[17] The remaining paragraphs that Novadaq moves to strike, however, do relate to opinions that Franklyn offered.[18]

Novadaq also challenges Hampton's remaining opinions—those responding to Topics 4, 7 and 9 and the implied opinions in Franklyn's report[19]—because they do not "rest[] on a reliable foundation" or are not "relevant to the task at hand."[20] On Topic 4, Hampton opines that "Boston

---

[12] *Perez v. State Farm Mut. Auto. Ins. Co.*, Case No. 06-cv-01962, at *8 (N.D. Cal. Dec. 7, 2011) (citing *Laflamme v. Safeway, Inc.*, Case No. 09-cv-00514, 2010 WL 3522378, at *3 (D. Nev. Sept. 2, 2010)).

[13] *Pinterest, Inc. v. Pintrips, Inc.*, Case No. 13-cv-04608, 2015 WL 2268498, at *1 (N.D. Cal. May 14, 2015).

[14] *See* Docket No. 281-3 at 6-8.

[15] *See* Docket No. 281-2 at ¶¶ 26-29.

[16] *See id.* at ¶ 15.

[17] Novadaq also moves to strike paragraph 14 of Hampton's report, but that paragraph is proper rebuttal because it relates more directly to the assumptions underlying Franklyn's report. *See id.* at ¶ 14.

[18] *See* Docket No. 281-2 at ¶¶ 32-33; Docket No. 281-3 at 4-6.

[19] *See* Docket No. 281-2 at ¶¶ 20, 23, 25, 33-34; Docket No. 281-3 at 5-8.

[20] *Daubert*, 509 U.S. at 597.

3
Case No. 14-cv-04853-PSG
OMNIBUS ORDER RE: MOTIONS IN LIMINE AND OTHER PRE-TRIAL ISSUES

Scientific's federal trademark registrations for SPYSCOPE, SPYGLASS and SPYBITE for related goods is prima facie evidence that Boston Scientific has federal trademark rights in SPY-formative marks for similar goods and services."[21] Although those registrations might give Boston Scientific certain rights in SPY-formative marks,[22] Karl Storz has cited no case to support Hampton's contention that they provide prima facie evidence of those rights. His opinion therefore has no "basis in the knowledge and experience of the relevant discipline,"[23] and he may not offer it at trial. Hampton also opines on the breadth of Boston Scientific's SPYSCOPE registration.[24] In forming the opinion, Hampton relied on a marketing brochure for a medical imaging product, even though he has no specialized experience in that field other than with clients.[25] His methodology in forming the opinion is unreliable, and he may not provide it to the jury.

Novadaq's other *Daubert* challenges, however, are unpersuasive. Hampton's opinions on Topics 7 and 9 explain his methodology and rely on his relevant experience.[26] Novadaq identifies potential issues with these opinions, but the problems do not undermine the opinions to the extent that they are unreliable. Hampton can testify to these opinions before the jury, and Novadaq can cross-examine him to highlight their deficiencies.

**B.   Docket No. 283: Novadaq's Motion to Exclude Testimony from Jesse David**

At the pre-trial conference, the parties agreed that this motion, along with Novadaq's

---

[21] Docket No. 281-2 at ¶ 20.

[22] *See Sun Microsystems Inc. v. Astro-Med Inc.*, Case No. 95-cv-20602, 1996 WL 369100, at *3 (N.D. Cal. Apr. 1, 1996); *E. & J. Gallo Winery & Gallo Cattle Co.* Case No. 86-cv-0183, 1989 WL 159628, at *20 (E.D. Cal. June 19, 1989).

[23] *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010).

[24] *See* Docket No. 281-2 at ¶ 34.

[25] *See id.*; Docket No. 295-2 at 184:6-185:16.

[26] *See* Docket No. 281-2 at ¶¶ 23, 25.

pending motion to strike David's expert report,[27] would be moot if the court were to rule that Novadaq was not entitled to disgorgement of Karl Storz' profits. The court has done exactly that.[28] The motion to exclude testimony from David and the motion to strike his expert report are DENIED AS MOOT.

### C. Docket No. 324: Karl Storz' Motion to Strike Novadaq's Jury Demand

In its summary judgment order, the court observed that "Novadaq only seeks damages 'for recovery of unjust enrichment and disgorgement' and not 'actual losses.'"[29] The court relied on Karl Storz' contention, which Novadaq did not rebut at the time, that Novadaq had abandoned any claim to actual losses.[30] Karl Storz cites the court's language in moving to strike Novadaq's jury demand.[31] In opposition to the motion to strike, however, Novadaq points out that its discovery responses consistently have included claims for compensatory damages "in the form of corrective advertising costs."[32]

For the proposition that Novadaq does not seek compensation for actual losses, Karl Storz and the court cited only a report from Novadaq's damages expert, Cliff Kupperberg, in which he said that Novadaq's "claims for damage include a claim for recovery of unjust enrichment and disgorgement," but that it had "no claim for actual losses."[33] Novadaq now clarifies that Kupperberg made this statement because Novadaq retained him only to opine on its claim for

---

[27] *See* Docket No. 213.

[28] *See* Docket No. 356 at 5.

[29] *See* Docket No. 292 at 12-13 (quoting Docket No. 223-12 at 3).

[30] *See* Docket No. 223-4 at 20; Docket No. 247-4 at 38-40.

[31] *See* Docket No. 324 at 4.

[32] Docket No. 338-5 at 10; Docket No. 338-6 at 10; *see also* Docket No. 28 at 27; Docket No. 338-9 at 11; Docket No. 338-10 at 12.

[33] Docket No. 223-12 at 3; *see* Docket No. 223-4 at 20 (citing Docket No. 223-12 at 3); Docket No. 292 at 12-13 (citing Docket No. 223-12 at 3).

unjust enrichment, not on Novadaq's actual damages.[34] A statement in an expert report, however misleading, cannot waive claims for damages that Novadaq both pled and disclosed. Novadaq is eligible to claim actual damages, and it is further entitled to present its claim to a jury.[35]

### D. Docket No. 303: Novadaq's MIL No. 1

Novadaq moves to exclude testimony or argument that Karl Storz sought advice from its outside counsel, the St. Onge law firm, about its adoption of the SPIES mark. Throughout discovery, Karl Storz invoked the attorney-client privilege whenever Novadaq tried to elicit information about the content of St. Onge's advice. Novadaq therefore argues that any testimony that Karl Storz sought, normally seeks or followed advice of counsel would be prejudicial. Novadaq also seeks to exclude evidence about how Karl Storz conducted its trademark searches, as well as testimony from Andy Corea, Karl Storz' counsel at St. Onge. The motion is GRANTED-IN-PART. Neither Novadaq nor Karl Storz may make arguments or elicit testimony about advice that Karl Storz received from St. Onge or that Karl Storz sought or typically seeks the advice of counsel. However, Karl Storz may introduce the search results that it produced in discovery along with testimony about how it conducted those searches. Because Karl Storz does not intend to call Corea as a trial witness, that portion of the motion is DENIED AS MOOT.

### E. Docket No. 303: Novadaq's MIL No. 2

Novadaq moves to exclude testimony or argument that it claims relates only to laches, unclean hands or abandonment, all of which are defenses on which the court has granted summary judgment in favor of Novadaq.[36] The motion is GRANTED-IN-PART. Testimony on Novadaq's alleged delay or misstatements to the USPTO is irrelevant and barred. Karl Storz also wants to introduce discovery responses from Novadaq about its first use of the SPIES mark, even though

---

[34] Docket No. 338 at 11-12.

[35] *See Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1111-13 (9th Cir. 2012); *Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 988-89 (9th Cir. 1996).

[36] *See* Docket No. 292 at 6-11.

6
Case No. 14-cv-04853-PSG
OMNIBUS ORDER RE: MOTIONS IN LIMINE AND OTHER PRE-TRIAL ISSUES

1  Novadaq later withdrew or amended those responses.  Novadaq no longer relies on those first use
2  dates.  Instead, it asserts priority in the SPIES mark due to tacking, the subject of Karl Storz'
3  fourth motion in limine.  The responses are no longer relevant, and Karl Storz may not introduce
4  them.

But, as Karl Storz points out, some of the evidence Novadaq seeks to preclude bears on
issues still remaining in the case.  Specifically, Boston Scientific's SPYSCOPE, SPYGLASS and
SPYBITE trademark registrations, as well as Novadaq's agreement with LifeCell in which
Novadaq agreed not to use the SPYSCOPE name for its endoscopic imaging products, bear on the
strength of Novadaq's mark.[37]  That evidence may come in at trial, assuming it is otherwise
admissible.

**F.     Docket No. 303: Novadaq's MIL No. 3**

Novadaq moves to bar Karl Storz from eliciting evidence that Novadaq did not conduct a
trademark survey.  The motion is DENIED.  Novadaq may be correct that a trademark survey is
not necessary to prove likelihood of confusion,[38] but "a trier of fact may be entitled to presume
that one party's failure to conduct a survey concedes that the survey evidence would be
unfavorable to it."[39]

**G.     Docket No. 303: Novadaq's MIL No. 4**

Novadaq moves to preclude Karl Storz from alleging or implying that Novadaq infringed

---

[37] *See Glow Indus., Inc. v. Lopez*, 252 F. Supp. 2d 962, 990-92 (C.D. Cal. 2002) (considering the crowdedness of the field and the parties' use of their marks in determining the likelihood of confusion).

[38] *See Midwestern Pet Foods, Inc. v. Societe des Produits Nestle S.A.*, 685 F.3d 1046, 1054 (Fed. Cir. 2012).

[39] *Monster, Inc. v. Dolby Labs. Licensing Corp.*, 920 F. Supp. 2d 1066, 1072 (N.D. Cal. 2013) (citing *Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d 1013, 1041 (C.D. Cal. 1998)); *see also Charles Jacquin et Cie, Inc. v. Destileria Serralles, Inc.*, 921 F.2d 467, 475 (3d Cir. 1990) (citing *Eagle Snacks, Inc. v. Nabisco Brands, Inc.*, 625 F. Supp. 571, 583 (D.N.J. 1985)) ("[A] plaintiff's failure to conduct such a survey where it has the financial resources to do so, could lead a jury to infer that the plaintiff believes the results of the survey will be unfavorable.").

7
Case No. 14-cv-04853-PSG
OMNIBUS ORDER RE: MOTIONS IN LIMINE AND OTHER PRE-TRIAL ISSUES

Karl Storz' registered SPIES-related marks. Novadaq notes that the court denied Karl Storz' motion for leave to file counterclaims of infringement,[40] so those claims are irrelevant now. The motion is GRANTED. However, if Novadaq suggests that the failure to raise these counterclaims undermines Karl Storz' argument for priority in the SPIES-related marks, Karl Storz is entitled to explain that the court did not allow it to do so.

**H.      Docket No. 303: Novadaq's MIL No. 5**

Novadaq moves to exclude testimony from witnesses that Karl Storz disclosed very late in the fact discovery period, as well as documentary evidence that Novadaq claims Karl Storz did not produce at all during fact discovery. Almost all of Novadaq's requested relief is moot. None of the late-disclosed witnesses appears on Karl Storz' list of trial witnesses. Further, many of the documents at issue relate only to Karl Storz profits, which are no longer in the case.[41] The only exception that the parties brought to the court's attention in their papers is a declaration by non-party David Stoffel. Novadaq claims that Karl Storz did not disclose the declaration until August 28, 2015, when it attached it as an exhibit to its motions for summary judgment.[42] Karl Storz points out, however, that Novadaq received the document in an email dated June 10, 2015,[43] before the close of fact discovery. There is no unfair surprise to Novadaq here. The motion is GRANTED-IN-PART, in its entirety with the exception of the Stoffel declaration.

At the pre-trial conference, Novadaq also identified a number of trial exhibits that Karl Storz plans to use but never disclosed in discovery. Karl Storz responded that many of these were higher-quality versions of documents that it already had produced or publicly available documents like trademark registrations and prosecution histories. The court encourages the parties to meet and confer about whether Karl Storz can use exhibits of this nature. If any disputes about trial

---

[40] *See* Docket No. 157.

[41] *See* Docket No. 356.

[42] *See* Docket No. 231-90.

[43] *See* Docket No. 330-1

exhibits remain, the court will take them up during trial.

I. **Docket No. 303: Novadaq's MIL No. 6**

Novadaq moves to preclude Karl Storz from calling Novadaq's trial counsel as witnesses. Karl Storz appears to have no intention of doing so, and it did not list any Novadaq attorneys on its trial witness list. The motion is GRANTED.

J. **Docket No. 303: Novadaq's MIL No. 7**

Novadaq moves to exclude evidence and testimony about Novadaq's non-U.S. trademark filings. The court previously denied Karl Storz' motion to compel production of documents related to these filings.[44] Karl Storz says it does not plan to introduce this evidence now. The motion is GRANTED.

K. **Docket No. 303: Novadaq's MIL No. 8**

Novadaq moves to preclude Karl Storz from offering evidence of its costs or deductions because, Novadaq claims, Karl Storz failed to provide that evidence through document production, deposition testimony or expert reports. Because Novadaq is not entitled to Karl Storz' profits,[45] the motion is DENIED AS MOOT.

L. **Docket No. 303: Novadaq's MIL No. 9**

Novadaq moves to bar Karl Storz from referring to Sybill Storz as "Dr. Storz" because that title is honorary. The motion is DENIED.

M. **Docket No. 303: Novadaq's MIL No. 10**

Novadaq moves to preclude Karl Storz from asking Novadaq witnesses about Novadaq's motives in filing this case. At the deposition of Novadaq employee John Fengler, Karl Storz asked him whether Novadaq had considered filing a patent infringement lawsuit before it decided to pursue the trademark claims at issue here. The motion is GRANTED IN PART. Karl Storz may elicit this testimony only if Novadaq raises the issue of its motivations for filing suit.

---

[44] *See* Docket No. 214.

[45] *See* Docket No. 356.

### N. Docket No. 303: Novadaq's MIL No. 11

Novadaq moves to exclude evidence about Karl Storz' registered SPIES-related marks and the implications of those registrations. The motion is DENIED. The evidence is relevant to the issue of willful infringement. Novadaq can bring up any problems with the USPTO registration process when it cross-examines Hampton.

### O. Docket No. 303: Novadaq's MIL No. 12

Novadaq moves to exclude evidence about third-party registrations for SPY-related marks because it believes that those marks are in unrelated areas. The motion is DENIED. Third-party use of similar marks may bear on the strength of Novadaq's marks.[46] Novadaq can cross-examine the relevant witnesses about how similar those marks are to Novadaq's and about the extent to which those marks are used in related fields.

### P. Docket No. 307-3: Karl Storz' MIL No. 1

Karl Storz moves to exclude evidence and testimony about instances of alleged actual confusion that occurred after fact discovery closed. Novadaq objects that the evidence did not exist during fact discovery, and Novadaq disclosed the instances of confusion to Karl Storz as soon as it learned about them. But regardless of whether Novadaq bears any blame for the late disclosure, Karl Storz still had no meaningful opportunity to explore evidence disclosed only a few months before trial. The motion is GRANTED.

### Q. Docket No. 307-3: Karl Storz' MIL No. 2

Karl Storz moves to exclude evidence and testimony about instances of alleged actual confusion that occurred outside the United States, arguing both that they impermissibly extend the scope of U.S. trademark law and that the allegations are vague, hearsay and irrelevant. The motion is DENIED. Evidence of confusion may still be relevant even if it occurs outside the United States.[47] Karl Storz can use cross-examination to explore any other infirmities it has identified.

---

[46] *See Glow Indus.*, 252 F. Supp. 2d at 990-92.

[47] *See Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 612-13 & n.6 (9th Cir. 2010).

10
Case No. 14-cv-04853-PSG
OMNIBUS ORDER RE: MOTIONS IN LIMINE AND OTHER PRE-TRIAL ISSUES

**R.    Docket No. 307-3: Karl Storz' MIL No. 3**

Karl Storz also moves to exclude evidence and testimony about instances of alleged actual confusion that are purportedly unsubstantiated, untrue or hearsay. The motion is DENIED. These arguments go to weight, not admissibility, and as above Karl Storz can elaborate on these problems on cross-examination.

**S.    Docket No. 307-3: Karl Storz' MIL No. 4**

Karl Storz moves to preclude Novadaq from making its tacking argument—that Novadaq can claim priority in the SPIES mark over Karl Storz because it is legally equivalent to the SPY mark that Novadaq has used at least since 2005.[48] Karl Storz contends that the argument is untimely and prejudicial because Novadaq never identified this theory in its discovery responses. The motion is DENIED. Karl Storz did propound interrogatories about the date that Novadaq first used the SPIES mark,[49] but Karl Storz never asked Novadaq to identify its priority date or the theories underlying that date. And, unlike abandonment, tacking is not an affirmative defense that Novadaq was required to raise as a counterclaim.[50]

**T.    Docket No. 307-3: Karl Storz' MIL No. 5**

Karl Storz moves to exclude evidence or argument about the discovery disputes between the parties, including Karl Storz' alleged abuses underlying Novadaq's pending motion for sanctions.[51] Novadaq responds that it has no intention of introducing testimony about discovery abuses, but it argues that it is entitled to tell the jury about specific missing or undisclosed evidence, most notably Karl Storz' purported failure to produce its head, Sybill Storz, for deposition. The motion is GRANTED, without prejudice to the pending sanctions motion.

---

[48] *See* Docket No. 292 at 15-17 (citing *Hana Fin., Inc. v. Hana Bank*, 135 S. Ct. 907, 909 (2015)).

[49] *See* Docket No. 248-30 at 20-21.

[50] *See* Docket No. 292 at 6-7.

[51] *See* Docket No. 152.

### U.    Docket No. 307-3: Karl Storz' MIL No. 6

Karl Storz moves to exclude evidence about the defenses that it raised but the court rejected. Novadaq does not oppose, except to note that it may respond if Karl Storz opens the door by mentioning the defenses. The motion is GRANTED.

### V.    Docket No. 307-3: Karl Storz' MIL No. 7

Karl Storz moves to exclude evidence about its intent in adopting the SPIES mark. The motion is DENIED. Even if the court had not reopened the issue of willful infringement,[52] the testimony would still be relevant because it relates to intent, which is one of the *Sleekcraft* factors.[53] Karl Storz also attacks the admissibility of the specific evidence that Novadaq has cited, but the objections, as above, go to weight and not admissibility. Karl Storz can highlight any weaknesses through cross-examination.

### W.    Docket No. 307-3: Karl Storz' MIL No. 8

Karl Storz moves to preclude Novadaq's expert, David Franklyn, from testifying that the USPTO should have refused Karl Storz' application to register SPIES-related marks. In particular, Franklyn notes that Karl Storz failed to submit certain materials in support of its application.[54] The motion is DENIED. Karl Storz has raised the affirmative defense that it has the right to use those marks because it eventually succeeded in registering them.[55] Evidence that the USPTO may have erred is plainly relevant to that defense, and any prejudice to Karl Storz from suggesting the omission does not outweigh the relevance.

---

[52] *See* Docket No. 343.

[53] *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 354 (9th Cir. 1979); *see also SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, Case No. 11-cv-04991, 2013 WL 4528539, at *16-17 (N.D. Cal. Aug. 23, 2013) (discussing the application of this *Sleekcraft* factor in a case involving reverse confusion).

[54] *See* Docket No. 281-3 at 8.

[55] *See* Docket No. 30 at 12.

12
Case No. 14-cv-04853-PSG
OMNIBUS ORDER RE: MOTIONS IN LIMINE AND OTHER PRE-TRIAL ISSUES

### X.   Docket No. 307-3: Karl Storz' MIL No. 9

Karl Storz similarly moves to preclude Franklyn from testifying that the Trademark Trials and Appeals Board should have denied Karl Storz' request to remand the then-pending trademark applications to the examiner.[56] Franklyn has opined that the TTAB erred because the evidence that Karl Storz offered in support of its request was not new.[57] For the same reasons as above, the motion is DENIED.

### Y.   Additional Stipulations and Disputes from Pre-Trial Conference

- Either party may bring a Fed. R. Civ. P. 50(a) motion orally if it so chooses.  In the event that a party feels that further briefing is necessary, the party can request a briefing schedule.  In the event either party wishes to bring a Fed. R. Civ. P. 50(b) motion following the close of trial, the parties shall follow the procedures laid out in the Civil Local Rules.[58]

- One party representative may attend the entirety of the trial.  Witnesses other than experts and each party's corporate representative will be sequestered.

- Each side will disclose to the other side each witness it intends to call live (in the order of call) and by deposition by 7:00 PM at least two days before the day of trial during which the witness will testify, except that witnesses to be called on a Monday must be disclosed by noon on the preceding Friday.  By 6:00 PM the night before a party intends to call a witness, it must provide the other side and the court with all the exhibits and demonstrative evidence it intends to use with that witness.  By 8:00 PM that same night, the other side must state any objections thereto or they are deemed waived.  The parties will attempt to meet and confer that night or in the morning to resolve such objections.

- The parties will exchange all demonstratives, visual aids and evidence that they plan to refer to in opening statements by 4:00 PM on Tuesday, December 29, 2015.  The other side must raise any objections to such use by 8:00 PM on Thursday, December 31, 2015, or they are deemed waived.

- For the designated deposition transcripts, objections need not be read to the jury, and they can be edited out of the transcript or video clips for hearing or viewing by the jury.

- The parties shall meet and confer as to confidentiality designations prior to trial.  The parties will file any requests for confidential treatment of information at trial by

---

[56] *See* 37 C.F.R. § 2.142(d).

[57] *See* Docket No. 281-3 at 9-10.

[58] *See* Civ. L.R. 7.

13
Case No. 14-cv-04853-PSG
OMNIBUS ORDER RE: MOTIONS IN LIMINE AND OTHER PRE-TRIAL ISSUES

Thursday, December 31, 2015.  The courtroom will remain open to the public over the course of trial, subject to any narrow and exceptional request of the parties.

- The parties may briefly introduce each witness at the beginning of each direct examination.  Each witness may be questioned by only one attorney per side.

- All disputes about exhibit admissibility or propriety of demonstratives will be addressed the morning that the exhibit or demonstrative is to be used at trial.

- During voir dire, each party will have 30 minutes to ask questions of the jury.  The scope of such questions will be limited to jurors' responses to the court's line of questioning and jurors' responses to the juror questionnaire.

- Each party will have a total of 20 hours for opening statements, closing arguments, direct examinations, cross examinations and any rebuttal.

- The parties will admit exhibits by agreement where possible.  Otherwise, exhibits must be used with a witness to be admitted into evidence.  Each party will move to admit exhibits as they are presented to the witness, during a break or at the end of the trial day.

- The court will pre-instruct the jury before opening statements.

- The jury may submit jury questions to the court following the conclusion of each witness's testimony.  After reviewing the questions posed and confirming that they are legally permissible, the court will ask any permissible questions to the witness on behalf of the jury.  Time during which the witness responds to questions posed by the jury shall be divided evenly between both sides.

- The parties shall consult with the clerk's office to arrange the use of the juror questionnaire proposed by Novadaq at Docket No. 304-1, with the following additional questions:
    o   "How is your health?" (blank)
    o   "Is sitting for long periods of time difficult for you?" (Yes/No) "If yes, please explain:" (blank)
    o   "Do you find it difficult to see or hear?" (Yes/No) "If yes, please explain:" (blank)
    o   "Do you have any chronic diseases?" (Yes/No) "If yes, please explain:" (blank)
    o   "Do you take any medications regularly?" (Yes/No) "If you answered yes to the previous question, do the medications make you tired or drowsy or might they interfere with your ability to concentrate for long periods of time?" (Yes/No)
    o   "Is there anything that may affect your ability to serve as a juror in this case?" (Yes/No) "If yes, please explain:" (blank)
    o   "Is there any reason why you should not serve on this jury, why you would be unable to do so, or why jury duty would present a serious hardship?" (Yes/No) "If yes, please explain:" (blank)
    o   "Why would you be a good juror in a case like this?" (blank)
    o   "What else should we know about you?" (blank)

14
Case No. 14-cv-04853-PSG
OMNIBUS ORDER RE: MOTIONS IN LIMINE AND OTHER PRE-TRIAL ISSUES

- o "Please circle any of the following with whom you are acquainted:" This question should be followed by a list or table containing the names of the undersigned, every attorney for each side and every potential witness that has been identified thus far.

- Each trial day will begin at 9:00 AM and end at 4:30 PM, with a one-hour lunch break. Counsel shall appear at 8:00 AM each day to address any preliminary evidentiary issues.

- Jurors will arrive and fill out the juror questionnaire on the morning of Monday, January 4, 2016. Counsel shall make copies of the jurors' responses and share them with each other and with the court as early as possible on that day. Voir dire will begin later on January 4 after the court and the parties have had the opportunity to review the responses. Opening statements will commence as soon as possible on January 4.

- Jury instructions and the verdict form will be addressed at the jury charge conference to be held during trial. No later than Wednesday, December 23, 2015, the parties may file amended proposed jury instructions and verdict forms to the extent that their scope has changed in light of this court's recent rulings.

**SO ORDERED.**

Dated: December 18, 2015

_____
PAUL S. GREWAL
United States Magistrate Judge